# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| CRAIG R. MOSCHKE, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-2018-CJW <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff, Craig R. Moschke (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I. BACKGROUND

Claimant was born in 1967, completed high school, and did not attend special education. AR 93. He has previously worked as a welder and an industrial truck mechanic. AR 92. The Administrative Law Judge (ALJ) determined that he was not capable of performing this past work, but that there was other work which the claimant could perform, such as a document preparer, ticket counter, or sorter. AR 92.

Claimant has previously applied for Title II disability and Tile XVI Supplemental Security Income and was denied on both claims, which was affirmed by the ALJ and District Court.  *See Moschke v. Astrue*, No. C11-2024, 2012 WL 3202918 at *1, 15 (N.D. Iowa Aug. 3, 2012).  Claimant filed his application for DIB on December 8, 2010, alleging a disability onset date of February 18, 2006.  AR 78, 257, 264.  He contends that he is disabled due to degenerative joint disease, a heal spur, personality disorder, reading disorder, and a cognitive disorder.  AR 82.  Claimant's claims were denied initially and on reconsideration.  AR 78.  He then requested a hearing before an ALJ.  ALJ Tela Gatewood conducted a hearing on February 20, 2013 (the Hearing) (AR 177-220), and issued a decision denying claimant's claim on September 27, 2013.  AR 75.

Claimant sought review by the Appeals Council, which denied review on January 30, 2015 (AR 1), leaving the ALJ's decision as the final decision of the Commissioner.  On April 2, 2015, claimant filed a complaint (Doc. 3) in this court seeking review of the Commissioner's decision.  On July 10, 2015, with the consent of the parties (Doc. 10), the Honorable Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment.  The parties have now briefed the issues, and the matter is fully submitted.

## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age,

education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a

minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's Residual Functional Capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

4

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011, but not thereafter. AR 82.

2. The claimant did not engage in substantial gainful activity during the period from the date of alleged onset of disability of February 18, 2006, through June 30, 2011, the date that the claimant last met the insured status requirements for disability insurance benefits. (20 C.F.R. § 404.1520(b) and §§ 416.971 *et seq.*). AR 82.

3. Through the date that the claimant last met the insured status requirements for disability insurance benefits, the claimant had the following severe impairments: degenerative joint disease of the right ankle and the lumbar spine, a heel spur, a personality disorder, a reading disorder, and a cognitive disorder (20 C.F.R. § 404.1520(c)). AR 82.

4. Through the date that the claimant last met the insured status requirements for disability insurance benefits, the claimant did not have an impairment, or a combination of impairments, which meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), § 404.1525, and § 404.1526). AR 83.

5. Through the date that the claimant last met the insured status requirements for disability insurance benefits, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). The claimant can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. He can stand and/or walk, with normal breaks, for a total of six hours in a workday. He can sit, with normal breaks, for a total of six hours in a workday. The claimant can balance, crouch, stoop, kneel, crawl, and climb occasionally. He cannot work at unprotected heights or around hazards. The claimant can perform simple, repetitive work with few changes. He cannot work with the public. The more restrictive limitations asked in the hypothetical question at the hearing could not be justified. AR 85.

6. Through the date that the claimant last met the insured status requirements for disability insurance benefits, the claimant has been unable to perform any past relevant work (20 C.F.R. § 404.1565). AR 92.

7. The claimant was born on August 26, 1967, and he was 43 years old, on the date that the claimant last met the insured status requirements for disability insurance benefits. At times relevant to this decision, the claimant is defined as a "younger individual" (ages 18 through 44) within the meaning of the Regulations (20 C.F.R. § 404.1563). AR 93.

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564). AR 93.

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). AR 93.

10. Through the date that the claimant last met the insured status requirements for disability insurance benefits, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. § 404.1569 and § 404.1569(a)). AR 93.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 18, 2006, the date of alleged onset of disability, through June 30, 2011, the date that the claimant last met the insured status requirements for disability insurance benefits (20 C.F.R. § 404.1520(g)). AR 94.

AR 83-95.

### IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a

zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed for two reasons:

1. The ALJ's RFC assessment is flawed as it improperly weighed the work-related limitations from examining psychologists Drs. Paul Conditt, Bruce Dawson, and Martin Edwards.

2. The ALJ's RFC assessment is flawed as it is not supported by a treating or examining source.

The court will address these two arguments separately below.

### A. RFC Determination - Applicable Standards

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical and mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### *1. The ALJ Properly Weighed the Opinions of Drs. Conditt, Dawson, and Edwards*

The ALJ properly evaluated plaintiff's RFC. The RFC determination is an administrative assessment, based on the totality of the evidence, of the extent to which plaintiff's impairments and related symptoms affect his capacity to perform work-related activities. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); Social Security Rulings (SSRs) 96-5p, 96-8p. This assessment is reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ properly found that plaintiff had an RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:
- can lift and/or carry and push and/or pull twenty pounds occasionally and ten pounds frequently;
- can stand and/or walk, with normal breaks, for a total of six hours in a workday;
- can sit, with normal breaks, for a total of six hours in a workday;
- can balance, crouch, stoop, kneel, crawl, and climb occasionally;
- cannot work at unprotected heights or around hazards;

- can perform simple, repetitive work with few changes; and
- cannot work with the public.

AR 85.

The ALJ evaluated the opinion of Dr. Conditt, who performed a psychological examination on January 27, 2010. AR 534-36. Dr. Conditt opined that plaintiff was moderately limited in the ability to understand instructions, procedures, and locations. AR 536. He further opined that plaintiff's pace was affected by physical pain and his tendency to get angry and give up easily when he cannot do something. *Id*. Dr. Conditt also said that plaintiff was severely limited in the ability to use good judgment, respond appropriately to changes in the workplace, and interact appropriately with supervisors, co-workers, and the public due to Asperger's disorder. *Id*. He concluded that plaintiff did not have the necessary interpersonal skills to hold gainful employment. *Id*.

The ALJ provided several reasons for discounting Dr. Conditt's opinion. The ALJ noted that Dr. Conditt examined plaintiff only one time, at the request of plaintiff and his girlfriend. AR 82. In evaluating a physician's opinion, an ALJ may consider the length of the treatment relationship and frequency of examination. 20 C.F.R. § 404.1527(c)(2). The ALJ also noted that plaintiff saw Dr. Conditt in connection with an effort to generate evidence for his appeal, rather than for the purpose of treatment. AR 82. Plaintiff told Dr. Conditt his chief complaint was that he was "applying for disability benefits due to a variety of concerns," including Asperger's disorder. AR 534. An ALJ can be wary when claimants obtain treatment for purposes of supporting their claim for benefits. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). An ALJ may also consider whether a physician formed his opinion in order to facilitate a plaintiff's receipt of disability. *See Adams v. Astrue*, No. 6:11-3216-DGK-SSA, 2013 WL 30569, at *3 (W.D. Mo. Jan. 2, 2013) (unpublished). In fact, the ALJ stated that although the context in which it was

produced could not be entirely ignored, Dr. Conditt's opinion still deserved due consideration. AR 82.

The ALJ properly noted that Dr. Conditt's Asperger's disorder diagnosis conflicted with the diagnoses of plaintiff's treating psychiatrist and psychologist. AR 82. It is within the purview of the ALJ to decide how much weight to afford a medical opinion when it conflicts with other medical opinions. *See Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009). Plaintiff argues that according to JoAnne Macasaet, M.D., his testing did not confirm an Asperger's diagnosis. Doc. 11, at 21; AR 606. However, the ALJ considered the opinions of Deborah Gideon, Ph.D., and Laura Calderwood, M.D., plaintiff's treating psychologist and psychiatrist. AR 82, 87-88. Dr. Gideon and Dr. Calderwood stated that plaintiff had a cognitive disorder and reading disability, not Asperger's disorder. AR 82, 87-88, 481-482, 504, 606. Dr. Conditt's Asperger's diagnosis conflicts with these opinions. AR 536.

The ALJ noted that unlike Dr. Conditt, Dr. Gideon and Dr. Calderwood had ongoing treatment relationships with plaintiff. AR 82-83. Generally, more weight is given to the opinion of treating sources. 20 C.F.R. § 404.1527(c)(2). The ALJ also noted that Dr. Gideon and Dr. Calderwood carefully evaluated plaintiff's mental status and based their diagnoses and opinions on their treatment notes and evaluations. AR 83. Dr. Gideon noted that plaintiff was cooperative, friendly, relaxed, confident, and open in his responses. AR 480. Dr. Calderwood noted that he was talkative and pleasant, his mood was "quite good," and he maintained good eye contact. AR 504-505.

The ALJ noted that Dr. Gideon's and Dr. Calderwood's diagnoses were consistent with other evidence in the record. AR 83. For example, psychiatrists Teresa Neira, M.D., Prasad Mikkileneni, M.D., Isabel Perez-Conde, D.O., and Ilhan Conklu, M.D., made similar diagnoses throughout 2010. AR 572, 580, 592, 600-601, 622. None of these physicians found that plaintiff had Asperger's disorder. To the contrary, they noted

12

that he was alert, oriented, attentive, and cooperative. AR 571, 579, 591, 600, 614, 621. Plaintiff also engaged "without problem," and his language, judgment, memory, and insight were intact. AR 571, 579-580, 591-592, 600, 621-622. Additionally, he had no perceptual disturbances and his thought processes were normal. AR 571, 579, 591, 600. In March 2010, plaintiff admitted that he and his girlfriend believed he had Asperger's disorder, but were "unable to get it diagnosed." AR 611. Thus, the ALJ properly gave Dr. Gideon's and Dr. Calderwood's opinions controlling weight because they were consistent with the objective evidence (AR 83), and she properly discounted Dr. Conditt's Asperger's diagnosis because it conflicted with these opinions. AR 82.

The ALJ found that plaintiff was economically motivated to obtain benefits. AR 89. In December 2007, plaintiff reported that he was trying to get his child support reduced or "put on hold." AR 487. He said that child support recovery required a letter regarding his inability to work. AR 489. Two days later, plaintiff said that his ex-wife wanted more child support. AR 485. He requested a "note right away to confirm disability." *Id*. Additionally, in April 2010, plaintiff stated that he was financially stressed due to child support and medical bills. AR 611. He said that he was currently in the process of re-applying for disability. *Id*. An ALJ may consider a claimant's economic motivation to qualify for benefits when assessing his credibility. *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992). The ALJ also noted that plaintiff stopped working in February 2006 because his earnings were insufficient to meet child support obligations and because he moved to Iowa to care for his parents. AR 87, 480. Stopping work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).

Thus, the ALJ properly articulated the inconsistencies upon which she relied in discrediting plaintiff's subjective complaints. AR 89-90. She properly discounted Dr.

Conditt's opinion because it was based on these discredited subjective complaints. AR 89-90. Plaintiff has not disputed the ALJ's credibility finding. *See* Doc. 11.

The ALJ also properly evaluated the opinion of Dr. Dawson, who performed a neuropsychological evaluation on November 4, 2010. AR 537-542. Dr. Dawson opined that plaintiff met the diagnostic criteria for Asperger's disorder. AR 541. She also noted that plaintiff's behavioral presentation was consistent with Asperger's. *Id.* Dr. Dawson concluded that if plaintiff desired to work, he would need a variety of accommodations to be successful. AR 542. The ALJ gave this opinion little weight. AR 91. Dr. Dawson's opinion that plaintiff would need accommodations in order to work did not provide any specific functional limitations. An ALJ may discount such vague, conclusory opinions. *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996). Further, this opinion is merely a vocational conclusion that attempts to resolve an issue reserved to the Commissioner. *Sadler v. Colvin*, No. C12-2092, 2013 WL 5675869, at *12 (N.D. Iowa Oct. 18, 2013) (unpublished) (opinion that plaintiff would need "extensive accommodations" was a vocational conclusion reserved to the commissioner).

The ALJ also properly discounted Dr. Dawson's opinion because, like Dr. Conditt, he relied on plaintiff's discredited subjective complaints. AR 91. *McDade*, 720 F.3d at 999. Dr. Dawson's exam findings do not support his opinion that plaintiff would need work accommodations due to Asperger's disorder. AR 542. Plaintiff smiled occasionally, maintained good eye contact, and was generally appropriate in social interactions. AR 539. Plaintiff's objective testing revealed that he performed in the average range on a measure of focused visual attention. AR 540. His immediate and delayed non-verbal recall with recognition cues and capacity for planning and organization were also within normal limits, and he had no problems with mental processing speed. *Id.* Additionally, plaintiff demonstrated high average mechanical reasoning and visual spatial processing, construction, and analysis. *Id.* He also demonstrated only mild

difficulty on measures of expressive language, fluency, and visual confrontation naming. *Id.* These mild findings do not support Dr. Dawson's opinion.

The ALJ also properly evaluated the opinion of Dr. Edwards. AR 91. Dr. Edwards completed a set of Mental Impairment Interrogatories on February 20, 2013, which is after the adjudicated period. AR 786-791. He opined that plaintiff was markedly limited in social functioning and activities of daily living, and constantly limited in concentration, persistence, and pace. AR 790. Dr. Edwards further opined that plaintiff had continual episodes of deterioration or decompensation. *Id.* The ALJ properly gave this opinion little weight. AR 91.

The ALJ properly noted that although Dr. Edwards testified to seeing plaintiff numerous times, the record did not contain any contemporaneous treatment notes. AR 91, 201. An ALJ may consider the absence of contemporaneous treatment notes to support a physician's opinion. *See Fullington v. Astrue*, No. 09-3455-CV-S-ODS, 2010 WL 5139435, at *4 (W.D. Mo. Dec. 10, 2010) (unpublished).

The ALJ also noted that Dr. Edwards did not perform any objective testing. AR 91, 212. An ALJ may discount a physician's opinion when it is not supported by his objective findings and diagnostic data. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001); *Wilson v. Colvin*, No. 5:13-06024-DGK-SSA, 2014 WL 3907786, at *3 (W.D. Mo. Aug. 11, 2014) (unpublished) (ALJ properly discounted physician's opinion because he did not perform any objective testing). The ALJ properly discounted Dr. Edwards' opinion because it was inconsistent with the opinions of plaintiff's treating physicians and based on complainant's subjective complaints and the opinions of other medical sources the ALJ gave little weight, such as Dr. Conditt. AR 82, 91. Thus, the ALJ properly gave Dr. Edwards' opinion little weight.

In summary, as shown above, this case involves the medical opinions of many treating and examining medical sources; some finding a disability, some not. A once-

examining psychologist, Paul Conditt, Psy.D., together with psychologists Bruce Dawson, Psy.D., and Martin Edwards, Ph.D., all opined that claimant does have Asperger's disorder, and, thus, is disabled. On the other hand, two treating psychiatrists, JoAnne Macasaet, M.D., and Laura Calderwood, M.D., and treating psychologist Deborah Gideon, Ph.D., all found that plaintiff did not have Asperger's disorder and was not otherwise disabled. These latter opinions is enough upon which the ALJ could base the decision. *See Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012). This is so even though, frankly, there may be enough evidence on the other side to have supported an opposing view had the ALJ so held. The Court should "disturb the ALJ's decision only if it falls outside the available 'zone of choice.' A decision is not outside that 'zone of choice' simply because [the court] may have reached a different conclusion had [it] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (internal citation omitted). This decision was within the ALJ's zone of choice.

### 2. *Substantial Evidence Supports the ALJ's RFC Finding*

The record in this case contains substantial and sufficient information for the ALJ to make an informed decision on the claim for disability benefits. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (stating an ALJ need ensure the record is sufficiently developed so she can make an informed decision). The record contains opinions from multiple treating and examining doctors and therapists, which the ALJ found were consistent with the evidence in the record as a whole. This is not a case where there was no medical opinion from an examining or treating doctor. This case involves the situation where the ALJ properly considered the opinions and found that some were entitled to controlling weight and some were not. AR 78-95. Thus, the present case is distinguishable from *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

16

As courts have recently noted:

> *Nevland* compels remand in some cases in which an ALJ determines a claimant's RFC without the benefit of medical evidence from an examining source. That issue did not arise here because the ALJ had medical evidence from a treating source . . . . Thus, *Nevland* does not compel remand in this case.

*See Sneller v. Colvin*, 2014 WL 855618, No. C12-4113-MWB, at *9 (N.D. Iowa Mar. 5, 2014) (unpublished) (internal citations omitted); *see also Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (holding that ALJ did not rely solely on non-treating doctors as RFC supported by substantial evidence, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations.").

Although plaintiff also bases his argument on the decision in *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004), the Eighth Circuit Court of Appeals declined to apply *Nevland* in that case. *See* Doc. 11, at 19. The Eighth Circuit Court of Appeals held in *Strongson*:

> This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue. In this case, there is substantial psychological evidence in the record, from both treating and examining physicians. Each of these sources described Strongson's functional abilities. Accordingly, we conclude that the ALJ's failure to obtain Ms. Diamond's views does not vitiate the force of the findings he made regarding Strongson's functional abilities.

*Strongson*, 361 F.3d at 1071-72 (internal citations omitted). Thus, the decision in *Strongson* undermines plaintiff's argument since the medical reports in the present case are almost exclusively from examining doctors and therapists.

The ALJ's reference to the state agency medical experts is in accordance with the relevant law from the United States Supreme Court, Eighth Circuit Court of Appeals, and

the Commissioner's Rulings, all of which hold that such opinions from state agency medical experts can provide substantial evidence to support the ALJ's RFC finding. *Richardson v. Perales*, 402 U.S. 389, 408 (1971) (finding a non-examining medical expert giving a medical opinion based on the evidence in the record was constitutional); *see Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007). In addition to *Strongson*, the Eighth Circuit Court of Appeals noted after the *Nevland* decision that the ALJ can properly rely upon the opinions of non-examining sources when the ALJ otherwise reviews the record as a whole. *Casey*, 503 F.3d at 694 ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). The Eighth Circuit Court of Appeals also noted that non-examining medical expert opinions can satisfy the ALJ's need to consider at least some supporting evidence from a professional. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citing 20 C.F.R. § 404.1545(c)). The Commissioner's regulations and rulings also permit the ALJ to rely upon the state agency medical experts. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180, at *2; *see* 20 C.F.R. § 416.927(e)(2); *see also Jones o/b/o Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003).

In short, the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for her assessment of claimant's lack of a disability. As such, the ALJ's determination is entitled to deference.

## VI. CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of plaintiff's impairments, I find that the Commissioner's determination that claimant was

not disabled is **affirmed**. Judgment shall be entered against plaintiff and in favor of the Commissioner.

    **IT IS SO ORDERED** this 26th day of July, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa